Good morning, Your Honor. Jeff Callis, Mr. Occhionero. Good morning. David Tuttleman, for Mr. Occhionero. Okay. You're going to share your time? Yes, Your Honor. Okay. This is a relatively straightforward case. What we have are an appeal on a motion for summary judgment. The standards of summary judgment are what we're using to review the case. There are disputed issues as to almost every factual allegation and assertion in the case. One of the primary disputed issues is whether there was an imminent threat for the abatement action that took place. There are substantial factual statements in the record as well as a finding of a superior court that there was no imminent threat. As a result, one of the issues we face is a due process issue. If there was no imminent threat, why wasn't there no pre-deprivation hearing? And even if the court were to say, for the sake of argument, there was an imminent threat, that threat evaporated according to the record as soon as the foam was taken out of the building. Rather than deal with that with a post-deprivation hearing, the city simply destroyed the foam. So that's number one. Number two, we have the retaliation issue. What did this foam look like? That type of foam you would find in a foam pillow, a foamer pillow or in a couch. It's just the old-fashioned yellow stuff or carpet padding. Spongy-looking. Pardon? Spongy-looking material. Spongy-looking or like carpet padding material, which is a little less spongy, but it's the same basic structure. Okay. So what was the material issue of fact on the First Amendment retaliation claim? Okay. It goes to the intent of the city and the intent of Mr. Creo. What we have is a citation given to Mr. Ochenaro for something in a parking space. It was a parking space citation. Right. Mr. Ochenaro is a letter writer. Right. He wrote a letter that basically said, tell me what you're taking. But he didn't write it to the people who were subsequently involved in the abatement. Yes, he did. He wrote letters to those people. Who did he write it to? I believe he wrote to Mr. Creo directly, and he wrote to whom it may concern in the Code Enforcement Department. Now, so where is the evidence in the record that Mr. Trejo knew about the letters he had written previously? Where can you point us in the record to show a material issue of fact that Mr. Trejo was aware of the letters when he took the abatement action? It's in Mr. Trejo's deposition, Your Honor, and you'll see it in a second. Now, was that deposition cited to the district court in response to the motion for summary judgment?  Okay. Point me in the record where the district court was apprised that Mr. Trejo was aware of the letter when he took the abatement action. I know the letter itself was in the record. Right. But I'm asking you, on a motion for summary judgment, you have to raise a material issue of fact. So I'm asking you to point me in the record where you informed the district court that Mr. Trejo was aware of the letter when he took the abatement action. Mr. Tuttleman will get to that point in a second. Are you raising a Fourth Amendment? Yes, Your Honor. Well, where is that best expressed in the district court? The district court failed to deal with it, and the city failed to address the Fourth Amendment. Well, but where is – where did you raise it? Where can we find it? It was raised implicitly rather than explicitly. Well, then how do you expect them to respond to it, and how do you expect to raise it here? To the extent that had it been previously discussed that it was an unlawful taking, an unlawful destruction of the property, we have the Fourth Amendment issue. It was not raised. No, you don't have a – you don't have an automatic Fourth Amendment issue every time that somebody violates a ordinance or a statute, so. I would – I would agree with that. Okay. In the meantime, while Mr. Tuttleman is looking, the other part of the retaliation issue is that once Mr. Otenaro said, hey, I don't want you coming on my property. I want to – you want to do this? Go get a warrant. That's my constitutional right. The city, Mr. Trejo, described that as being obstructionist and uncooperative, and immediately thereafter started the – that was in November. But how does that fit into the retaliation rubric? Because it's not First Amendment. Well, to exercise your constitutional rights to say I have a right not to do that and to have that speech. Well, but if law enforcement is coming out to your house and telling you you have to do something and you refuse to do it, it's not retaliation for law enforcement to enforce the proceedings. What case do you have to support the argument that obstruction of law enforcement can give rise to retaliation cause of action? Well, Your Honor, I don't believe the issue is in all due respect. The retaliation here occurred when the city unlawfully seized and destroyed Mr. Otenaro's property. But it has to be in retaliation for protected conduct. So there has to be a link between protected conduct and you allege that it was in retaliation for his First Amendment – exercise of his First Amendment rights in writing the letters. So you have to link that First Amendment activity to the retaliation in order for it to have a cause of action. That is correct. However, there's no dispute that those letters set off a chain of events. Well, the issue is whether or not – well, there is a dispute. Because the city says the people who initiated the abatement action had no idea of the letter-writing campaign. And so it was your obligation in district court to present evidence to the court that would raise a material issue of fact. And the court ruled that you did not raise a material issue of fact. So I'm asking you, were in the record, did you raise a material issue of fact that Trejo knew about the letter-writing campaign at the time he initiated the abatement action? Well, for one thing, the letters were addressed to him. The letters were sent directly to Mr. Trejo. Where is that in the record? And, in fact, in replying to Mr. Ocinero's summary judge of motion, the city readily admitted receiving Mr. Ocinero's – The city received them, but the issue is whether or not Mr. Trejo was aware of the letters and took action in response to those letters. That's the problem. Well, I believe – and, again, I'd have to look in the record – but I believe those letters were – they produced at his deposition, weren't they? And he denied knowing anything about them. That's the record, isn't it? That's a disputed record. That's a disputed fact as to whether or not he got them. They were addressed to him. They were addressed to the city. So there's a presumption that if they were mailed, that they were received. We can't – Was it – were they addressed to his office number? They were addressed to code enforcement. They were addressed to Mr. Trejo in that area. Well, maybe the city can help us out on that. Okay. You have a – We're going to reserve, Your Honor. You may. Thank you. Your Honor, Joe Rubin on behalf of the city. May it please the Court, one issue you raised is kind of what the material looked like. And if the Court hasn't seen it, the addendum attached to our brief are pictures from the day of the abatement, so it gives an idea at least what the materials are that we're talking about. Since I've never had the opportunity to respond to their reply, and some of the issues that you raised today address the reply, I'd like a few minutes to do so as well as their argument. In their reply on page 2, it's important that they say, in general, little disagreement exists over the city's facts. In order to – and thereafter, in page 5 of their reply, they say, in order to create a material issue of fact, we're going to attempt to raise two issues that were not part of the initial operative pleading, the third amended complaint. One issue is we're going to say, hey, the protected speech, we weren't just limiting it to the communications to MAS that were made to the finance department in 2002. That's no longer going to be an issue. There's going to be other protected speech that allegedly was told to Mr. Craig. Let's just go to the finite issue that we've discussed here. Correct. And that that issue is whether or not the letters that were written by Mr. Ochenaro Well, I think we need to be specific about that, Your Honor, and that's a very good point. All through this litigation, three years before the trial court, the protected speech was the alleged allegation that it was improper to delegate taxing authority to MAS. And that alleged protected speech was communications directly to the finance department in 2002. There was no speech directed at Mr. Trejo. And if you look at – Well, at the time of the summary judgment motion. Correct. And the issues in the Third Amendment complaint, if you look at Paragraph 11 and Paragraph 30 of the Third Amendment complaint, it clearly delineates what the issue is. For example, in Paragraph 30, it says, the constitutional deprivation is Plaintiff Ochenaro's claim regarding defendant, City of Fresno's retaliation against him for his public criticism and challenge of MAS. And that is the supplemental excerpt record of 621. Right. But all of that was subsumed in the letters that he wrote talking about you don't have authority to do this. Correct. But that's the protected speech at issue here. And Trejo, who's in code enforcement, there's no evidence that he ever had knowledge of that protected speech. And I'll go further, Your Honor, just to confirm what the protected speech at issue in this case was, is if you look at Special Interrogatories 13, 16, 19, and 36, that were part of the record before the court at the trial court at the district court level, all the protected speech allegations related to issues regarding MAS that were communicated to the finance department, not to code enforcement, not to Trejo, that were in 2002. And I will cite to the record that that appears in the supplemental excerpt of record, pages 65, 66, 70, 71, 75, 76, and 100, 101. So why would opposing counsel represent that those communications were sent directly to Mr. Trejo? Well, that is my issue before the court. Because in their reply brief for the first time on this summary judgment is some issue that there was a First Amendment protected speech that was allegedly directed at Mr. Trejo. I have no idea what that alleged First Amendment speech is. Am I correct that this started out as a protest, this was a tax? Correct. Taxing controversy? Well, it was in 2002. This was an issue of whether or not the city was looking for potential business tax compensation, and so they hired an outside entity to go try to find businesses that potentially weren't paying business taxes. And then those are the issues that came up with the MAS in communications with Trejo. In the end of November 2002, the finance department made the decision, hey, it's not worth going after this thing. It's too much of a pain. We don't think this business is generating that much income. We're going to drop it. Then in January 2003, the city has one of the most catastrophic events in the history of the city, which is the Crippen fire, which lasted a month, which called local emergency, which remediation efforts were unbelievable, and it was one of the most catastrophic events in the city's history. In response to that, code enforcement got involved and started to look at recyclers and things of that nature. And when we talk about causation on First Amendment retaliation, it's pretty disingenuous to say undisputed that plaintiffs demanded the city obtain a warrant to gain access to his property and then at the same time say, oh, no, that wasn't really the cause of us getting the city obtaining the warrant. It was 13 months ago when we allegedly were writing letters regarding MAS to a different department on a different issue. What about his due process claim? What do you say about that? Well, I think there's a number of issues as far as that. I think the court pointed to one is the Fourth Amendment claim obviously is not part of the operative pleading, which is a significant issue to try to raise for the first time at the appellate level as opposed to the trial court level. The second is, which is important, too, is if you look at the Rule 12 order at the trial court level, the issue that was going forward on the procedural due process claim was the limited issue of whether or not the city retaliated against limited plaintiff's due process rights and retaliation for his protected speech. That was the order going forward. In the appellate process, the appellant has never attacked that order, and any waiver or inclination that that order was incorrect, at least at this point, has been waived. What about the procedural due process issue that was addressed by the court? Well, I think the procedural due process is. It is the same issue as the First Amendment retaliation. The claim was basically in retaliation for the First Amendment did we in fact impact his due process, and I think that's what the court was relying on based upon the Rule 12 order. I'd also say that for eight months the city afforded due process to this individual on numerous occasions with notices of orders, citations with rights to appeal, at least five or six warnings in which the city indicated that it would have to take enforcement action if they didn't do it themselves to gain compliance. There were informal meetings. There was meetings at City Hall with representatives. There was notice pursuant to the Code of Civil Procedure with respect to the abatement warrant. There was also an opportunity for the individual, for appellant to bring a TRO before the court, before the abatement warrant was issued. But what about a hearing, an administrative hearing? There's a freestanding procedural due process right to have a hearing pre-deprivation to a property interest. That's the part that troubles me. Well, I think that there was certainly an opportunity in the four administrative citations to appeal because they were threatened that there were going to be legal actions taken. Yeah, but that's not how it works. That's not how it works. The administrative citation is not the avenue to get a pre-deprivation procedural hearing. It's once the city has decided to do an abatement, the city is supposed to notify the property owner, and the property owner will have an opportunity to challenge whether or not there is a nuisance. It's at that point that, unless there is an emergency, that the property owner gets a chance to try to save his property. So why wasn't that done? Well, because they did it pursuant to the warrant. They did give notice. There was a TRO hearing, and there was a summary abatement. And you, again, get to the point where at the end of the day, I'm not sure, and obviously there was post-deprivation hearings and rights that were given, and you bring out a point to the extent that Trejo did not do it according to policy and guidelines, plaintiff can't satisfy Monel because that's an episodic event by an individual who clearly was not a policymaker. Well, he did say he spoke for the director, so why wouldn't he be a policymaker? There's a far difference between somebody implementing policy and somebody having the ability to be a policymaker under Monel as far as being able to enact policy, create policy. The policy at issue here is not Trejo's decision. That can't be – that's going to be making – responding at superior liability on behalf of the city, and that clearly was not implicated by Monel. Well, the issue is whether or not there was a material issue of fact, whether he was a decisionmaker. It's not whether he conclusively was. And there's no evidence before this record that he was a policymaker. We're talking about who? Trejo. Trejo, yeah. So the only way that the procedural due process question comes in is through the Monel? Well, I think there are a number of issues as far as the procedural due process. One, obviously, the Fourth Amendment was not brought as part of the Third Amendment complaints. I just don't see it in the brief. Well, the second issue and the way it was brought in initially, Your Honor, with respect to the underlying hearing was there's a Rule 12 order that was issued in this case by the trial court which says the limited procedural due process claim going forward is whether or not the city limited plaintiff's due process rights based upon the protected speech. Well, I understand that was in the trial court's order. I'm talking about the appellant's brief. I can't – I don't see it there. The appellant's brief, what I don't understand is they raised, obviously, a Fourth Amendment due process claim. In the operative complaint, there's a Fifth Amendment claim that doesn't apply to municipalities. So the answer is it wasn't discussed below because the issue below, one, it wasn't a Fourth Amendment issue, and, two, we had the prior order of the district court which discussed what he believed to be the procedural due process claim going forward. And obviously, the district court also not only addressed it based upon the procedural due process issue, it also followed up by saying even if you got past that, you still have the Monell issue. Thank you. You have used your time. Are there any further questions? No. Thank you, Your Honor. Thank you, Your Honor. Counsel, could you address Judge Schroeder's observation that the opening brief doesn't address the procedural due process issue? Mr. Tuttle? Time's going. Your Honor, my understanding is that the due process claim and the due process procedure is instituted when there is a seizure for the purpose of destruction or deprivation. I'm just asking you, where is that discussion in your blue brief? Mr. Tuttle, I'll have it for you in a second, Your Honor. If I could address the Monell quickly because it was raised. We know that Trejo, as a code enforcement officer, according to the city charter, has the right to be delegated to do anything. The delegation goes right down. We know that Trejo, the manager of code enforcement, the city attorney, and other people at medium to high levels in the city, met and made the determination that they were going to do an abatement prior to having carried out the inspection. Eight days went by between the time that that court order, the warrant was issued, and it was executed. That is more than sufficient time to say to Mr. Ochinero, we're going to come in here because we think you're in serious violation and we're taking your stuff, so let's have a hearing on it right now. Even if you were to take the position that it was an imminent threat, the minute it came out of the building, the threat evaporates. They can hold off the destruction for a day or two to have the hearing. Okay. Well, what about opposing counsel's observation that the hearings on the TRO and the administrative hearings on the warrant were sufficient to satisfy due process requirements? It wasn't a hearing on the – the administrative hearing was specifically limited to the billing issues. It's on the billing form, and it says you have a right to appeal the billing issues or this bill. That's what the appeal right that he was informed of is. Okay. We're – you're in the red. Do you want to give us a page cite? Yes, Your Honor. Well, let's see. Real fast, the page cite is 17. It says no dispute exists for resident city officials. You called it a Fourth Amendment, but you talked about the due process. Fourth Amendment rights without due process of law. Yeah. Okay. And the other thing, by the way, real fast at record tabs, 27 and 28, the letters were addressed to Israel Trejo, Code Enforcement Inspector, City of Fresno Court Enforcement Division, Room 3070, Fresno, California. Okay. Thank you. The matter just argued is submitted for decision.
judges: Collins, Schroeder, Rawlinson